# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Robert E. Blackburn

Civil Action No. 21-cv-00871-REB

ROBERTA L. TAFOYA,

    Plaintiff,

v.

KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security,

    Defendant.

## ORDER DENYING DEFENDANT'S MOTION PURSUANT FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) TO DISMISS PLAINTIFF'S COMPLAINT

**Blackburn, J.**

The matter before me is the motion to dismiss contained in the Acting Commissioner's **Motion Pursuant to Federal Rule of Civil Procedure 12(b)(1) To Dismiss Plaintiff's Complaint in Part and for an Extension of Time Within Which To File the Certified Administrative Record** [#7],[2] filed May 24, 2021.[3] By this motion, the Acting Commissioner seeks to dismiss plaintiff's putative constitutional separation-of-powers claims for lack of standing. I deny that aspect of the motion.

---

[1] On July 9, 2021, President Joseph R. Biden appointed Kilolo Kijakazi as Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul, former Commissioner of Social Security, as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] "[#7]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

[3] I previously granted that aspect of the motion which sought an extension of the Commissioner's deadline to file her answer until after the motion to dismiss was resolved. (**Minute Order** [#8], filed May 25, 2021.)

## I.  JURISDICTION

I putatively have jurisdiction of this matter pursuant to 42 U.S.C. §405(g) (review of final decision of Commissioner of Social Security).

## II.  STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction and thus may adjudicate only claims the Constitution or Congress gives them jurisdiction to determine.  ***Morris v. City of Hobart***, 39 F.3d 1105, 1110 (10th Cir. 1994), ***cert. denied***, 115 S.Ct. 1960 (1995); ***Fritz v. Colorado***, 223 F.Supp.2d 1197, 1199 (D. Colo. 2002).  Concomitantly, the class of persons authorized to bring suit is limited by constitutional and prudential principles of standing.  ***See Warth v. Seldin***, 422 U.S. 490, 500-01, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).  "[S]tanding is a threshold issue in every case[.]"  ***Board of County Commissioners of Sweetwater County v. Geringer***, 297 F.3d 1108, 1111 (10th Cir. 2002) (citation and internal quotation marks omitted).  If a putative plaintiff lacks standing, the court is without subject matter jurisdiction to consider her claims. ***See, e.g.***, ***Warth***, 95 S.Ct. at 2206-07; ***Schlesinger v. Reservists Committee to Stop the War***, 418 U.S. 208, 215, 94 S.Ct. 2925, 2929, 41 L.Ed.2d 706 (1974).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may consist of either a facial attack or a factual attack on the complaint.  ***Holt v. United States***, 46 F.3d 1000, 1002 (10th Cir. 1995).  The Acting Commissioner's motion presents a facial attack, that is, it questions the sufficiency of the complaint, the allegations of which I therefore must accept as true.  ***Id.***  Once challenged, plaintiff bears burden to demonstrate she has standing to bring suit.  ***Lujan v. Defenders of Wildlife***, 504 U.S. 555, 561, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).

### III.  ANALYSIS

By this action, plaintiff seeks review of the Commissioner's decision denying her claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*  In addition to challenging this substantive determination, plaintiff also claims statutory limits on the President's ability to remove the Commissioner of Social Security violate constitutional separation-of-powers principles.  As a result of this alleged constitutional defect, plaintiff contends the Administrative Law Judge (ALJ) who determined her claim for benefits lacked authority to render that decision.  While the Acting Commissioner concedes plaintiff has standing as to the substantive claim, she maintains plaintiff lacks standing to bring this constitutional challenge.  ***See DaimlerChrysler Corp. v. Cuno***, 547 U.S. 332, 352, 126 S.Ct. 1854, 1867, 164 L.Ed.2d 589 (2006) (plaintiff must demonstrate standing as to each claim and form of relief).

"[T]he irreducible constitutional minimum of standing" requires plaintiff to prove (1) that she suffered an "injury in fact;"[4] (2) that there is a causal connection between her injury and the conduct of which she complains; and (3) that her injury is likely to be redressed by a favorable decision in this case.  ***Lujan***, 112 S.Ct. at 2136.  Stated more succinctly, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."

---

[4] That is, "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." ***Lujan***, 112 S.Ct. at 2136 (internal citations, quotation marks, and footnote omitted).  The Acting Commissioner apparently concedes the ALJ's decision denying plaintiff's claim for benefits constitutes an injury in fact, although as explained in more depth herein, the nature of the injury in a case such as this is not the substantive content of the decision, but the fact that it ostensibly was issued by an official who lacked constitutional authority.

3

***DaimlerChrysler Corp.***, 126 S. Ct. at 1861 (citation and internal quotation marks omitted).  The Acting Commissioner insists plaintiff can establish neither of these latter two requirements – traceability or redressability.  Before examining these issues, some background on the nature of plaintiff's constitutional arguments is necessary.

Plaintiff's constitutional claim is premised on a putatively logical extension of the Supreme Court's recent decision in ***Seila Law v. Consumer Financial Protection Board***, – U.S. –, 140 S.Ct. 2183, 207 L.Ed.2d 494 (2020).  The appellant in ***Seila Law*** was a California law firm which provided debt-relief services.  In the course of investigating the firm for potential unlawful practices in the advertising, marketing, and sale of such services, the Consumer Financial Protection Board (CFPB) issued a Civil Investigative Demand (CID) requiring Seila Law to produce information and documents related to its business practices.  ***Id.***, 140 S.Ct. at 2194.  When Seila Law refused, the CFPB filed a petition in the district court to enforce the demand.  ***See id.***

As justification for its noncompliance, Seila Law maintained the structure of the CFPB violated the constitutional mandate of separation of powers.  Specifically, Seila Law noted the CFPB, an agency under the auspices of the Executive Branch, was headed by a single individual who could be removed by the President only for "inefficiency, neglect, or malfeasance in office."  12 U.S.C. § 5491(c)(3).  ***See Seila Law***, 140 S.Ct. at 2191.  Seila Law argued this provision violated Article II of the Constitution, under which the executive power belongs wholly and exclusively to the President.  Although the President may delegate his authority to lesser executive officers to assist him in discharging the responsibilities of his office, because he retains "ultimate responsibility" for use of the executive power, he has an "active obligation to

4

supervise" those officers.  *Seila Law*, 140 S. Ct. at 2203 (citation and internal quotation marks omitted).

The Court agreed with Seila Law that this constitutional responsibility was thwarted by limitations on the President's ability to remove the Director of the CFPB. "The CFPB's single-Director structure contravenes this carefully calibrated system by vesting significant governmental power in the hands of a single individual accountable to no one:"

> The Director is neither elected by the people nor meaningfully controlled (through the threat of removal) by someone who is. . . .  Yet the Director may unilaterally, without meaningful supervision, issue final regulations, oversee adjudications, set enforcement priorities, initiate prosecutions, and determine what penalties to impose on private parties.  With no colleagues to persuade, and no boss or electorate looking over her shoulder, the Director may dictate and enforce policy for a vital segment of the economy affecting millions of Americans.

*Id.* at 2203-04.  In short, "[t]he CFPB Director's insulation from removal by an accountable President . . . render[s] the agency's structure unconstitutional." *Id.* at 2204.  The Supreme Court further cemented this understanding of the President's removal powers this past term, finding "[a] straightforward application of our reasoning in *Seila Law*" likewise rendered unconstitutional the statutory protection from removal except for cause afforded the Director of the Federal Housing Finance Authority ("FHFA").  *Collins v. Yellen*, – U.S. –, 141 S. Ct. 1761, 1784 (2021).

Plaintiff here insists the Social Security Administration suffers from the same constitutional defect.[5] The Department of Justice agrees. *See Constitutionality of the Commissioner of Social Security's Tenure Protection*, 45 Op. O.L.C __ (Slip Op. at 10-15) (July 8, 2021) (available at:  https://www.justice.gov/olc) (last accessed:  July 26, 2021).) So does the current Administration, which promptly removed the quondam director of the agency following the issuance of this  Memorandum Opinion from the Office of Legal Counsel. (*See supra* n.1.)

While ultimately, the righteousness *vel non* of her arguments on the merits may gain plaintiff little, if anything,[6] the question presently before me is one of standing, and

---

[5] As presently constituted, the Social Security Administration was created by the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, which moved the agency from a component of the Department of Health and Human Services to an independent agency of the Executive Branch, *id.* sec. 101, § 701(a) (codified at 42 U.S.C. § 901(a)).  The Commissioner serves for a term of six years and "may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office." *Id.* sec. 102, § 702(a)(3) (codified at 42 U.S.C. § 902(a)(3)).

[6] In *Seila Law*, a plurality found the offending removal provision was severable from the remainder of the Dodd-Frank Act and remanded to the Ninth Circuit to consider whether the CID could be ratified and enforced by an Acting Director accountable to the President. *Seila Law*, 140 S.Ct. at 2207-2211.  On remand, the Ninth Circuit found the ratification of the then-current Director – acting with knowledge the she was removable by the President at will – sufficient to require Seila Law's compliance with the CID. *See Consumer Financial Protection Bureau v. Seila Law LLC*, 984 F.3d 715, 718 (9th Cir. 2020), *as amended on denial of reh'g en banc*, 997 F.3d 837 (9th Cir. 2021).  The Department of Justice has concluded that the removal provision of the Social Security Act likely is also severable, *see* 45 Op.L.C. at __ (Slip Op. at 15-17), and given the circumstances of her appointment, the current Acting Director undoubtedly is aware that she serves at the pleasure of the President.  This in itself may be enough to undo plaintiff's constitutional argument, as it is not clear that the Acting Director must ratify the actions of her predecessor. *See Collins*, 141 S.Ct. at 1788 (noting that *Seila Law* does not stand for the proposition that ratification is necessary).

The outcome of *Collins* is even less auspicious for plaintiff's substantive claim.  The Court there rejected the appellant's argument that the actions of the Director of the FHFA of which appellant complained were void:

> All the officers who headed the FHFA during the time in question were properly *appointed*.  Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office.

thus does not implicate the merits.  *Davis v. United States*, 564 U.S. 229, 249, n.10, 131 S.Ct. 2419, 2434 n.10, 180 L.Ed.2d 285 (2011) ("[S]tanding does not depend on the merits of a claim.") (internal quotation marks and alterations omitted); *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89, 118 S.Ct. 1003, 1010, 140 L.Ed.2d 210 (1998) ("Jurisdiction is not defeated by the possibility that the averments [in a complaint] might fail to state a cause of action on which petitioners could actually recover.") (citation, internal quotation marks, and first alteration omitted).  I thus return to those arguments.

The Acting Commissioner argues plaintiff cannot establish traceability, that is, that her injury – the unfavorable disability decision – was caused by an action of the quondam Commissioner "and not . . . th[e] result [of] the independent action of some third party not before the court."  *Lujan*, 112 S. Ct. at 2136 (citation and internal quotation marks omitted; alterations in original).  As the Acting Commissioner acknowledges, the requirements for establishing traceability for structural challenges such as this one are not onerous:

> [A] litigant challenging governmental action as void on the
> basis of the separation of powers is not required to prove
> that the Government's course of conduct would have been
> different in a "counterfactual world" in which the Government
> had acted with constitutional authority.  In the specific
> context of the President's removal power, we have found it
> sufficient that the challenger "sustain[s] injury" from an
> executive act that allegedly exceeds the official's authority.

---

*Collins*, 141 S. Ct. at 1787 (emphases in original).  Accordingly, "the unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office," including implementing the provision of which the appellant complained.  *Id.* at 1788 n.23.  It thus may well be that, even if the removal provisions of the Social Security Act are unconstitutional, the agency's ALJs still had authority to issue disability determinations.

***Seila Law***, 140 S.Ct. at 2196 (internal citations omitted).  Nevertheless, the Acting Commissioner maintains plaintiff cannot meet this test because the Commissioner was not involved in the ALJ's decision.

It is true that ALJs enjoy statutory protections under the Administrative Procedures Act which are intended to guarantee their decisional independence.  ***See*** 5 U.S.C. §§ 554(d), 556, 557(d)(1).  ALJs are hired pursuant to guidelines established by the Office of Personnel Management (OPM) which are designed to ensure their qualifications to serve in that role.  ***See*** Spencer Davenport, *Resolving ALJ Removal Protections Problem Following **Lucia***, 53 U. MICH. J.L. REFORM 693, 697 (Spring 2020).  Under this system, ALJs are not entitled to bonuses, subject to evaluations, or supervised by employees of the agency who performed investigatory or prosecutorial functions.  5 U.S.C. § 5372.  In addition, ALJs are removable only for "good cause" after a hearing conducted, not before the agency, but instead before the Merit Systems Protection Board.  5 U.S.C. § 7521(a).  ***See also Ramspeck v. Federal Trial Examiners Conference***, 345 U.S. 128, 130-33, 73 S.Ct. 570, 572-74, 97 L.Ed. 872 (1953) (outlining the historical roots of the various employment protections afforded administrative hearing officers).  Perhaps most importantly, and in addition to these statutory protections, ALJs are afforded absolute judicial immunity for actions taken in their judicial capacities to "preserv[e] the[ir] independent judgment."  ***Butz v. Economou***, 438 U.S. 478, 514, 98 S.Ct. 2894, 2915, 57 L.Ed.2d 895 (1978).[7]

---

[7] The independence of ALJs from agency influence has been thrown in to doubt by recent developments, however.  In ***Lucia v. Securities Exchange Commission***, – U.S. –, 138 S.Ct. 2044, 201 L.Ed.2d 464 (2018), the Supreme Court determined that ALJs working within the SEC are not mere employees of the agency but are instead "Officers of the United States" who must be appointed in

Nevertheless, it is not clear to the court how the decisional independence of ALJs cures the problem of their putative lack of authority to issue those decisions. To prove traceability, plaintiff need only show she sustained injury from an act that allegedly exceeds the ALJ's authority. ***Seila Law***, 140 S.Ct. at 2196. The ALJs of the Social

---

accordance with the Appointments Clause, U.S. CONST. art. II, § 2, cl. 2. ***Lucia***, 138 S.Ct. at 2049, 2053-54. Because SEC department staff hired the agency's ALJs, the ALJ who heard and determined the appellant's case at the agency level held his office in violation of the Appointments Clause. ***Lucia***, 138 S.Ct. at 2054. The appellant thus was entitled to "a new hearing before a properly appointed official." ***Id.*** at 2055 (citation and internal quotation marks omitted).

In response to this decision, former President Trump issued an Executive Order exempting ALJs from the competitive selection process under the OPM and affording agency heads additional discretion in hiring. *See* Executive Order 13,843, *Excepting Administrative Law Judges From the Competitive Service*, 83 FR 32755, 2018 WL 3388912(Pres.) (July 10, 2018). While this decision was intended to "give agencies greater ability and discretion to assess critical qualities in ALJ candidates . . . without proceeding through complicated and elaborate examination processes or rating procedures that do not necessarily reflect the agency's particular needs," *see id.*, 83 FR 32755-32756, it also has raised concerns about the continuing independence of ALJs thus appointed. ***See***, ***e.g.***, Association of Administrative Law Judges, *Statement by Hon. Marilyn Zahm, President of the Association of Administrative Law Judges (AALJ) on White House Executive Order on Administrative Law Judges* (July 12, 2018) (characterizing Executive Order 13,843 as "a court-packing plan that will allow agency heads to hand pick judges who hear cases at the Social Security Administration and dozens of other federal agencies. This change will politicize our courts, lead to cronyism and replace independent and impartial adjudicators with those who do the bidding of political appointees."); House Ways & Means Committee, Statement of Chairman Rep. Richard Neal (July 10, 2018) ("Impartiality plays a central role in Administrative Law Judges' work. Allowing the appointment of judges who are big campaign donors, beholden to industry, or otherwise unqualified will result in unfair, biased rulings that harm ordinary Americans.") (available at:  https://waysandmeans. house.gov/media-center/press-releases/neal-statement-trump-administration-politicization-administrative-law) (last accessed:  July 27, 2021); Eric Yoder, *Trump Moves To Shield Administrative Law Judge Decisions in Wake of High Court Ruling*, WASHINGTON POST, July 10, 2018 (quoting Caroline Fredrickson, President of The American Constitution Society, to effect that Executive Order 13,843 "could have a stunning impact on how myriad administrative claims are handled. Political appointment could, for example, lead to more administrative law judges with pro-corporate anti-worker biases.") (available at: https://www.washingtonpost.com/news/powerpost/wp/2018/07/10/trump-moves-to-shield-administrative-law-judge-decisions-in-wake-of-high-court-ruling/) (last accessed:  July 27, 2021). ***But see*** American Constitution Society, William Funk, *Trump's Politicization of the Administrative Judiciary* (July 19, 2018) (finding these concerns potentially overblown because "current and new ALJs will only be able to be removed for cause as determined by the Merit Systems Protection Board. That protection is statutory (5 USC § 7521(a)) and cannot be undone by [Executive Order]. In other words, the [Executive Order makes no change to the grounds for removal or other sanction of ALJs." (available at:  https://www.acslaw.org/expertforum/trumps-politicization-of-the-administrative-judiciary/)  (last accessed  July 27, 2021); Dr. Jeff T.H. Pon, *Memorandum for Heads of Executive Departments and Agencies, Executive Order – Excepting Administrative Law Judges from the Competitive Service* (July 10, 2018) ("The procedures prescribed in 5 USC 7521 and 5 CFR part 1201 will apply to an agency action to remove, suspend, reduce in level, reduce pay, or furlough for 30 days or less of an ALJ in the competitive or excepted service.") (available at:  https://chcoc.gov/content/executive-order-%E2%80%93-excepting-administrative-law-judges-competitive-service) (last accessed:  July 27, 2021).

9

Security Administration derive their authority by delegation from the Commissioner. *See* 42 U.S.C. § 405(b)(1) (directing the Commissioner "to make findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter"). An ALJ's disability determination *is* the determination of the Commissioner. If the removal protections afforded the Commissioner violate the constitutional requirement of separation of powers, the Commissioner has no authority to delegate. Under those conditions, the ALJs themselves ostensibly are operating without constitutional authority, and their disability determinations – which again, are the decisions of the Commissioner – arguably are null. This appears sufficient to this court to meet the minimal requirements of traceability in a case such as this.

Nor does the fact that the ALJ who decided plaintiff's case was appointed by an Acting Commissioner, Nancy Berryhill, alter this determination. Ms. Berryhill, previously the agency's Deputy Commissioner for Operations, rose to the position of Acting Commissioner under the auspices of the Federal Vacancies Reform Act, which authorizes the President to direct a person "to perform the functions and duties of the vacant office temporarily in an acting capacity." 5 U.S.C. § 3345(b)(3). **See also** Memorandum, *Providing an Order of Succession Within the Social Security Administration*, 81 FR 96337 §1, 2016 WL 7487744(Pres.) (Dec. 23, 2016) (Deputy Commissioner for Operations is first in line to perform the functions of the office if the Commissioner and Deputy Commissioner cannot).

That Ms. Berryhill's position was temporary, however, does not mean she could be removed at will. In fact, the plain language of the Social Security Act suggests

otherwise. It provides "*[a]n individual serving in the office of Commissioner* may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office." 42 U.S.C.A. § 902(a)(3) (emphasis added). That language is broad enough to encompass an Acting Commissioner. **See Dante v. Saul**, 2021 WL 2936576 at *8 (D.N.M. July 13, 2021). **Cf. Collins**, 141 S.Ct. at 1781 (because removal restrictions of the FHFA applied only to the Director, "any constitutional defect in the provision restricting the removal of a confirmed Director would not have harmed [the plaintiffs], and they would not be entitled to any relief" by actions of an Acting Director who enjoyed no such protections).

The Acting Commissioner also maintains plaintiff cannot establish redressability because a remand based on the unconstitutionality of the ALJ's exercise of his authority would not necessarily result in a more favorable determination on plaintiff's substantive claim for benefits. This misconstrues the nature of plaintiff's alleged injury, which resides not in the substantive determination per se, but in the fact that it was issued in the ostensible absence of constitutional authority. Thus, in a case such as this, plaintiff "is not required to prove that the Government's course of conduct would have been different in a 'counterfactual world' in which the Government had acted with constitutional authority." **Seila Law**, 140 S.Ct. at 2196 (internal citations omitted). It is sufficient if "a decision in [plaintiff's] favor could [] lead to the award of at least some of the relief [she] seek[s]." **Collins**, 141 S.Ct. at 1779. I thus find and conclude that the requirement of redressability also is satisfied in this case.

## IV.  ORDERS

For the reasons set forth herein, I find and conclude that plaintiff has standing to pursue her constitutional claim.  The Acting Commissioner's motion to dismiss under Rule 12(b)(1) therefore is denied.

**THEREFORE, IT IS ORDERED** that the motion to dismiss contained within the Acting Commissioner's **Motion Pursuant to Federal Rule of Civil Procedure 12(b)(1) To Dismiss Plaintiff's Complaint in Part and for an Extension of Time Within Which To File the Certified Administrative Record** [#7], filed May 24, 2021, is denied.

Dated July 29, 2021, at Denver, Colorado,

BY THE COURT:

Robert E. Blackburn
United States District Judge